## J. N. OUTTEN ET AL v. C. C. SMITH.

**Rent—Implied Agreemnt for Legatee's Liability for Rent.**

The use of lands for a long period of time by a legatee with full acquiesence and knowledge of the other devisees, in the absence of any agreement or promise to pay rent therfor, will not subject them to an indebtedness for the use of the premises by implication, in a suit for a division.

**Lands and Conveyances—Partition—Lien.**

Where an estate has been devised and one of the legatees has the use of the property, with the acquiesence of the others, in an action for a partition, the value of the improvements on the land at the time of the death of the intestate, should be ascertained, and one half charged to the legatee in possession, to be a charge upon the half of the landed estate as may be set apart to them.

**Commissioners Report—Consent Reference by Parties—Acceptance of Report.**

A consent reference, by the parties to a suit, to the appointment of commissioners, will not bind the defendants to an acceptance of the report to an unequal division of the property, and liability of defendants for rent and improvements on lands, as adjudged against them by the commissioners.

APPEAL FROM UNION CIRCUIT COURT.

February 7, 1868.

OPINION OF THE COURT BY JUDGE PETERS:

In 1843 James B. Smith owned the land which is the subject of this suit and was living upon it; he was a single man, and never was married; early in the year his health failed him, and Mrs. Outten, a widowed sister, with four children, went to his house to nurse him; in March, 1843, Smith died, intestate, leaving his sister, Mrs. Outten, and the appellee, his brother, his only heirs at law. After his death Mrs. Outten remained on the land with her family until her death in 1858, and appellants J. N. Outten and Mrs. Delaney, her only surviving children, continued to live on the place after her death, no partition having been made.

Shortly before January, 1866, appellee manifested an intention

to have the land divided, and threatened to do so by running a line through it east and west, and in January, 1866, appellee brought this action for partition. Commissioners were appointed to make partition, and to report the same to court; the commissioners were agreed upon, and the court approved them.

They reported that the tract by survey contained 245½ acres, and that they had divided it, assigning to appellee 135¼ acres, and to appellants 110¼, including the improvements which were put on the land by intestate, and the same that had been occupied by appellants and their mother; to this report exceptions were taken, but they were overruled by the court, the report confirmed, and conveyances ordered accordingly; and from that judgment Mrs. Outten's heirs have appealed.

From the evidence of Buckman, it appears that the commissioners, of whom he was one, estimated the value of the improvements on the land at the death of J. B. Smith in 1843, and gave to appellee the one-half thereof in land, estimating the improvements at $400, and paying him the one-half thereof in land, valued at $5 or $6 per acre, and charged appellants rent on 48 acres which they had cleared and which they assigned to appellee for the whole time they cultivated it, and allowed them credit for the cost of clearing the same; leaving a balance of $174.67-100 in favor of appellee for rent; he also proves that the 135¼ acres of land given appellee, are "now worth a great deal more than the 110 acres given to plaintiffs;" but the precise difference he does not state. The reason assigned for this inequality is that the order of reference was by consent of parties, and points out the duty of the commissioners—or rather what they shall do. But if it be conceded that the consent order is to be construed to a consent as to what facts the commissioners should ascertain and report, it does not amount to a consent or agreement by appellants that they would pay the amount of rent that the commissioners should report against them; or that they would pay for improvements made by intestate in land at its value in 1843. No such agreement is expressed in the order, nor do the words import it. The division is unequal, as is proved, and that part appellee gets by it worth a great deal more than that appellants get; it was made on a wrong basis, and a misapprehension of the order appointing the commissioners, and cannot be approved by this court.

From the long acquiescence of appellee in the occupancy of the land by his sister and her children, he living in the immediate vicinity without ever claiming rent, or an intimation that he intended to do so, indicates very strongly that it was not his purpose, and in view of the relation of the parties, their circumstances, and the length of time appellants and their mother occupied, no agreement or promise to pay rent, or an indebtedness therefor, will, or can, be implied.

But the value of the improvements on the land at the time of the death of intestate should be ascertained, and the one-half thereof appellants should be required to pay to appellee, and in case of their failure to pay the same, it should be a lien on their part of the land, the land to be estimated at the present value; and as appellants are not charged with rents, they should not be allowed anything for improvements.

Wherefore, the judgment is reversed, and the cause remanded, with directions to divide the land equally between appellants and appellee, according to quantity and quality, appellee to have one-half thereof, and appellants the other half, to be laid off so as to include the improvements put on the land by intestate, J. B. Smith, in appellants' part, the one-half of the value of which they are to pay to appellee, and for which half of the value he may have a lien on the land, and for further proceedings not inconsistent with this opinion.

*Lindseys, for appellants.*

*Huston, for appellee.*